## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 22-14959-LMI |
| **ISAAC HALWANI** and **GISELLE HALWANI,** | Chapter 11 |
| Debtors. | |
| **PHIRIK INVESTMENT GROUP, LLC,** a Nevis Limited Liability Company and **ERIK GAUTIER,** an individual, | Adv. Proc. No. 22-01345-LMI |
| Plaintiffs, | |
| v. | |
| **ISAAC HALWANI,** an individual and **GISELLE HALWANI,** an individual, | |
| Defendants. | |

## ISAAC HALWANI AND GISELLE HALWANI'S
## MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Isaac Halwani ("**Mr. Halwani**") and Giselle Halwani ("**Mrs. Halwani**") (collectively the

"**Defendants**" or "**Debtors**") move to dismiss Plaintiff's Third Amended Complaint [ECF No. 10]

(the "**Complaint**") filed by Phirik Investment Group, LLC ("**Phirik**") and Erik Gautier

("**Gautier**") (collectively "**Plaintiffs**"), pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] and

state as follows:

### I.      Brief Overview

On December 2, 2022, Plaintiffs filed a Third Amended Complaint against the Debtors

seeking to except from discharge the debts allegedly owed to them based on 11 U.S.C.

---

[1] Made applicable in bankruptcy court pursuant to Federal Rule of Bankruptcy Procedure 7012.

§523(a)(2)(A) & (B), including a single count of conspiracy to commit fraud.[2] Dismissal of the complaint is appropriate because the Plaintiffs fail to allege sufficient facts to warrant a finding in their favor for each claim. Further, Gautier lacks standing to bring these claims as he assigned his rights to the debt he is seeking to be excepted from discharge.

## II.    Legal Standard

Under the federal pleading standard, a complaint must contain a "short and plain statement of the claim" that shows that "the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Merely stating the elements of a claim along with conclusory statements is not sufficient to meet Fed. R. Civ. P. 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, (2009)("recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012)("A complaint that provides 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' is not adequate to survive a Rule 12(b)(6) motion to dismiss."(citation omitted)). To survive a motion to dismiss, a complaint must contain enough facts that show that the claim is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). Claims are facially plausible only where they enable a court to infer that the defendant is liable for the misconduct alleged. *Id.* Facts that show a mere possibility of liability is not enough. *Id.*

Although a court must generally accept the factual allegations in a complaint as true for purposes of a 12(b)(6) motion, the court is not required to do so if the facts are mere legal conclusions couched in facts. *Id.* ("we 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citation omitted)); *See Chaparro*, 693 F.3d at 1337 ("if allegations are indeed more conclusory than factual, then the court does not have to assume their truth"); *Mamani*

---

[2] Counsel for the Plaintiffs have informed the Debtors that this Count will be dismissed.

*v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011)("Legal conclusions without adequate factual support are entitled to no assumption of truth").

### III.    Argument

#### a.   Gautier lacks standing.

A claimant seeking to exercise federal court jurisdiction must have standing to bring his or her claim. *Maverick Media Grp., Inc. v. Hillsborough Cnty., Fla*., 528 F.3d 817, 819 (11th Cir. 2008); *In re Whittle*, 449 B.R. 427, 429 (Bankr. M.D. Fla. 2011). Standing requires that the claimant show that he or she: (1) suffered or will imminently suffer a cognizable injury; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury. *Maverick Media Grp., Inc.*, 528 F.3d at 819 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130 (1992)); *In re Whittle*, 449 B.R. at 429.

Determining whether a claimant suffered a cognizable injury often requires analyzing the claimant's cause of action. *In re Whittle*, 449 B.R. at 429. In the context of statutory claims, the court asks whether the statute grants persons in the claimants position a right to judicial relief. *Id.*

The Plaintiffs' claims are based on 11 U.S.C. §523(a)(2) and conspiracy to commit fraud. Under 11 U.S.C. §523(c)(1), a debtor will be discharged from the debts specified under 11 U.S.C. §523(a)(2) unless the bankruptcy court determines that such debt is excepted from discharge by "request of the creditor to whom such debt is owed". 11 U.S.C. §523(c)(1); *see In re Whittle*, 449 B.R. at 429 ("the essential question is whether plaintiffs are creditors of the debtor.").

As alleged in the Complaint, Gautier is not a creditor of the Debtors. [Complaint ¶ 34]. Gautier assigned any rights he had to the debt to Phirik. The Complaint makes it clear that Phirik is the owner and holder of the Revolving Line of Credit Agreement ("**Credit Agreement**"), the Second Amended and Restated Portfolio Interest Revolving Line of Credit Promissory Note

("**Note**"),  and  the Guaranty Agreements executed by the Debtors, Frozen Wheels, LLC, and YL Group, LLC (the "**Guarantees**"; together with Credit Agreements and the Note, collectively  the "**Agreements**"). Since Gautier assigned any rights he has under the Agreements, he is not a creditor of the debtor to whom the debt is owed. Thus, Gautier lacks standing to seek to discharge these claims. *See Hansen v. Wheaton Van Lines, Inc.*, 486 F. Supp. 2d 1339, 1346 (S.D. Fla. 2006) ("By assigning all such rights, Plaintiff has no standing to pursue the instant action. Once the assignor assigns its rights to pursue a claim against a third party to another, the assignor retains no right to sue the third party. An assignment transfers all rights in the thing assigned.").

**b.  The Complaint fails to state a claim upon which relief may be granted.**

In general, to state a claim, a complaint must satisfy Fed. R. Bankr. P. 7008, which applies Fed. R. Civ. P. 8. Under Rule 8(a)(2), a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Where, as here, the complaint asserts a claim for fraud or mistake, however, the allegations must satisfy the heightened pleading standard under Fed. R. Bankr. P. 7009, which applies Fed. R. Civ. P. 9.  *In re Reefe*, 638 B.R. 834, 839 (Bankr. S.D. Fla. 2022). Under Rule 9(b), allegations must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy the heightened pleading standard of Rule 9, the complaint must provide at least "some indicia of reliability" to support the fraud allegations, which may be accomplished by pleading "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310–11 (11th Cir. 2002). "[T]o survive a motion to dismiss, Plaintiffs must assert the who, what, when, and where of the purported fraud." *Reefe*, 638 B.R. at 839; citing

*Cox-Tanner v. Taylor, Bean, & Whitaker Mortg. Corp. (In re Taylor, Bean, & Whitaker Mortg. Corp.)*, No. 3:09-BK-7047-JAF, 2011 WL 5245420, at *5 (Bankr. M.D. Fla. 2011).

Section 523(a)(2) excepts from discharge certain debts. Under 11 U.S.C. §523(a)(2), a discharge does not discharge an individual debtor from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>
>> (B) use of a statement in writing–
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or insider's financial condition;
>>> (iii) on which the creditor to who, the debtor is liable for such money, property, services or credit reasonably relied; and
>>> (iv) that the debtor caused to be made or published with intent to deceive[.]

*See* 11 U.S.C. § 523(a)(2).

### i. The Section 523 (a)(2)(A) claim

For a debt to be non-dischargeable under section 523(a)(2)(A), a creditor must prove: (1) the debtor made a false representation with the intent to deceive the creditor; (2) that the creditor relied on the false representation; (3) the reliance was justified; (4) and the creditor sustained a loss as a result of the false representation. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437 (1995); *In re Wood*, 245 F. App'x 916, 917–18 (11th Cir. 2007); *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998); *In re Rensin*, 597 B.R. 177, 184–85 (Bankr. S.D. Fla. 2018), aff'd sub nom. *Rensin v. Fed. Trade Comm'n*, 604 B.R. 917 (S.D. Fla. 2019); *In re Daprizio*, 365 B.R. 268, 279 (Bankr. S.D. Fla. 2007).

Under section 523(a)(2)(A), a debtor's intent to deceive must be actual. *In re Utter*, 2017

WL 1091875, at *4 (Bankr. M.D. Fla. Mar. 22, 2017), *judgment entered*, 2017 WL 11569198 (Bankr. M.D. Fla. Mar. 22, 2017). The intent to deceive cannot be implied. *Id*

The Complaint references four alleged representations that support the Plaintiffs' 523(a)(2)(A) claim: (i) that the business would be profitable; (ii) all funds invested would be used for the sole purpose of "financing the [p]rojects"; (iii) interest would be paid; and (iv) payment would be made on the 20th of each month. Each of these alleged representations are insufficient to support the Plaintiffs' claims.

First, mere failure to perform in accordance with a contract or an agreement is not sufficient to warrant a finding of intent to deceive. *Whitcomb v. Smith*, 572 B.R. 1, 16 (B.A.P. 1st Cir. 2017)("a debtor's 'mere failure to perform is not sufficient evidence of scienter nor is subsequent conduct contrary to the original representation necessarily indicative of fraudulent intent.'" ); *In re Meltzer*, 171 B.R. 166, 168 (Bankr. S.D. Fla. 1994). In cases involving unfulfilled promises, a plaintiff must prove that at the time the promises were made the defendant had no intention of fulfilling them or knew that fulling them was not possible. *In re Viciedo*, 612 B.R. 233, 238 (Bankr. M.D. Fla. 2020); *In re Miceli*, 237 B.R. 510, 514–15 (Bankr. M.D. Fla. 1999); *In re Hutchinson*, 193 B.R. 61, 65 (Bankr. M.D. Fla. 1996).

Second, insolvency at the time the promise was made is not enough by itself to prove intent not to pay or perform. *See In re Shadinger*, 357 B.R. 158, 165–66 (Bankr. N.D. Ala. 2006)("The debtor's insolvency or inability to pay does not by itself provide a sufficient basis for inferring the debtor's intent."); *see also In re Davis*, 2013 WL 6796657, at *2 (Bankr. M.D. Ala. Dec. 23, 2013)("Were a creditor able to successfully argue that a debt is nondischargeable simply because a debtor failed to follow through on a future promise to pay, most bankruptcy debts would never discharge."). If a debtor believed at the time of making the promise that a debt would be repaid,

even if hindsight proves that the possibility was unrealistic, the debtor lacks the fraudulent intent required under 523(a)(2)(A); *In re Shadinger*, 357 B.R. at 165–66 ("A debtor's honest belief that a debt would be repaid in the future, even if in hindsight found to have been very unrealistic, negates any fraudulent intent.").

The Plaintiffs allege that the Debtors either did not intend to keep their pre-loan promises or could not keep them because the Debtors were heavily in debt, in default on other obligations, and being sued and threatened with suit. [Complaint ¶ 28]. Taking the allegations as true, even though there are no factual allegations of actual lawsuits or unpaid debts, these facts alone are not sufficient to warrant a finding that the Debtors did not intend to fulfil their promises or that they could not fulfil their promises. Even if repayment of the Loaned Money is unlikely, mere insolvency at the time the pre-loan statements were made is not enough to find the required fraudulent intent under section 523(a)(2)(A).

Additionally, the Plaintiffs claim that the Debtors allegedly made false statements that the food venture would be profitable. In the Complaint, however, the Plaintiffs state that the Debtors reinvested the food venture profits into the business, implying that it was profitable at some point. The Court is not required to take, as true, the claim that the food venture would be profitable because it contradicts other parts of the Complaint. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint." (citation omitted)).

Prior to loaning the money, the Plaintiffs allege that Mr. Halwani represented that the money would be used to invest in a specific venture. First, the Complaint does not allege that the money was used for anything other than the projects. Second, the Agreements contain no

restriction on use of the loan proceeds. Third, the Agreements contain a merger clause. Under the

merger clause, the Agreements supersede any prior understanding, agreements, or commitments.

That clause states:

> (h) This  Agreement [or "This Note"] will be deemed to express,
> embody,  and supersede any previous understanding, agreements, or
> commitments, whether written or oral, between the parties with
> respect to the general subject matter hereof. This Agreement may
> not be amended or modified except in writing signed by the parties.

[Complaint, Ex. 1].

As such, the Agreements do not place any requirements on how the loaned money must be

invested or how it is spent. Although Plaintiffs allege that they relied on Mr. Halwani's statements

regarding the use of the loan proceeds, prior to signing the Agreements containing the merger

clauses, the Plaintiffs are or should be aware that any prior commitments regarding the proceeds

are superseded by the Agreements, and a nullity.

Additionally, justifiable reliance is necessary element the Plaintiffs must allege and prove.

*In re Osborne*, 455 B.R. 247, 252 (Bankr. M.D. Fla. 2010). A court looks to the individual

plaintiff's capacity and knowledge which the plaintiff has or can be charged against the plaintiff

under the facts of the plaintiff's case. *Id.* A plaintiff is not justified in relying on statements made

by the debtor where the facts should be apparent to one of plaintiff's knowledge and intelligence

that an investigation into the statements is required.  *In re Freedman*, 431 B.R. 245, 259 (Bankr.

S.D. Fla. 2010), *aff'd*, 427 F. App'x 813 (11th Cir. 2011). Nor is a plaintiff justified in relying on

defendant's statements where after they were made, the plaintiff discovered facts that should serve

as a warning of possible deception. *Id.*

The Plaintiffs failed to allege sufficient facts to show that their reliance was "justifiable".

The Plaintiffs only allege the bare legal conclusion that they "justifiably relied" on certain

statements. [*See* Complaint ¶s 18, 26, 51]. There are no ultimate facts that the Plaintiffs allege, such as any due diligence by the Plaintiffs, warrant a finding that reliance on some of the statements was justified.

Additionally, the Plaintiffs allege that the full principal of the money loaned by Plaintiffs is currently due with interest. [Complaint ¶ 41]. Based on this allegation, the Debtors did not make payments of principal to the Plaintiffs across any of the alleged loans. If the Debtors made no principal payments on initial loans, prior to lending any additional money, Plaintiffs should have investigated whether payments would be made. This has not been alleged. Plaintiffs are not justified in relying on statements Mr. Halwani made regarding payments if subsequent loans were entered into after payments were already missed.

Further, to the extent the checks bounced before money was loaned, the Plaintiffs should have been alerted that the Debtors may have been facing financial difficulties. Relying on later statements that Mr. Halwani would make payments on the Money Loaned without investigating the claim is not justified on its face.

Because the Plaintiffs failed to provide sufficient facts to warrant a finding that when the Debtors made the promises they could not or did not intend to keep them, dismissing the Plaintiffs' 11 U.S.C. §523(a)(2)(A) claim under Rule 12(b)(6) is warranted.

### ii.  The Section (a)(2)(B) claim

The Plaintiffs failed to plead sufficient facts to warrant a finding that the debt was obtained by a writing respecting the debtor's or insider's financial condition, received prior to any money allegedly loaned by the Plaintiffs. "Section 523(a)(2)(B) applies to a debtor's written statements that present a substantially untruthful picture of the debtor's financial condition by misrepresenting the type of information that would normally affect the decision to grant credit." *In re Polasky*, No.

2:18-AP-594-FMD, 2021 WL 614032, at *5 (Bankr. M.D. Fla. Feb. 17, 2021). "For a debt to be nondischargeable under § 523(a)(2)(B), the creditor's reliance on the debtor's statement must be reasonable. Generally, the standard for reliance under § 523(a)(2)(B) is higher than the standard for reliance under § 523(a)(2)(A) because the "reasonable" requirement of § 523(a)(2)(B) places some level of responsibility on the creditor to verify the basis for the statement, which is more demanding than the "justifiable" requirement of § 523(a)(2)(A)." *Id.*

### 1. The Loaned Money was not "obtained by" the post-loan statements.

Under section 523(a)(2), the debt that a creditor is seeking to be excepted from discharge must itself have been "obtained by" the misconduct laid out in (a)(2). *In Re Gaddy*, 977 F.3d 1051, 1057 (11th Cir. 2020), cert. denied sub nom. *SE Prop. Holdings, LLC v. Gaddy*, 209 L. Ed. 2d 548, 141 S. Ct. 2514 (2021)(applying (a)(2)(A) but noting that under (a)(2) the debt the creditor is seeking exempt from discharge must itself have been "obtained by" the items listed in (a)(2)); *In re Bratcher*, 289 B.R. 205, 213 (Bankr. M.D. Fla. 2003)("[A] debtor must have obtained money, property, or services as a result of his fraudulent conduct."); *In re Rubenstein*, 101 B.R. 769, 771 (Bankr. M.D. Fla. 1989)(same); *see also In re Daprizio*, 365 B.R. at 280 ("the law is clear that in order for a 11 U.S.C. § 523(a)(2) action to be successful the misrepresentation must have occurred and been relied upon at the time the loan was extended or renewed."). Debts are not excepted from discharge where the debts themselves were not the result of the conduct listed in (a)(2) even if the debtor engaged in fraudulent conduct after the debt was incurred to hinder creditor collection. *In Re Gaddy*, 977 F.3d at 1057 (holding debts not excepted from discharge even though the debtor engaged in fraud after incurring the debt to prevent creditor collection); *In re Hill*, 2021 WL 4515245, at *6 (Bankr. M.D. Fla. Sept. 30, 2021)("while such conduct was essentially an attempt to hinder [Creditor's] collection efforts, it does not render the breach of contract debt

nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)."); *See In re Rivera*, 2020 WL 4018986, at *2 (Bankr. S.D. Fla. July 16, 2020)(granting motion to dismiss because even though the creditor alleged that the debtor engaged in fraud after incurring the debt to prevent creditor collection, the debt itself was not obtained by fraud); *see also In re Daprizio*, 365 B.R. at 280 ("Plaintiff cannot rely on allegations of [Debtor's] behavior or representations after the inception or the renewal of the loans, because it could not have relied on such actions or representations when initiating the loan or renewing it.").

Here, the Plaintiffs rely on limited written statements to support their claim; (i) the checks (discussed in more detail *infra*); (ii) the August 5, 2021 letter; (iii) the April 4, 2022 wire transfer statement; and (iv) an Maryland e-mail and bills of lading regarding personal protective equipment (the "PPE Documents"). The August 5, 2021 letter and April 4, 2022 wire transfer statement both occurred after the last loan agreement provided by Phirik. Specifically, the Amended and Restated Revolving Line of Credit Agreement was entered into on April 13, 2021. *See Exhibit 2*. Therefore, none of the alleged debts by the Plaintiffs could have been "obtained" by the August 5, 2021 letter or the April 4, 2022 wire transfer statement, which occurred subsequent to any lending.

With regards to the PPE Documents, the Plaintiffs allege that Mr. Halwani made statements about certain contracts he had with the State of Maryland, the Complaint does not allege what about the PPE Documents were false. Thus, the allegations relating to Plaintiff's section 523(a)(2)(B) claim, even if accepted as true, are insufficient to warrant a finding in favor of the Plaintiffs on their (a)(2)(B) claim.

### 2.  The Plaintiffs never granted the Halwanis a forbearance.

Although section 523(a)(2)(B) does not provide for exception to discharge of a forbearance agreement, courts are split on whether forbearance is an "extension, renewal, or refinancing

of credit[.]" *In re Hay Phat*, 623 B.R. 371, 377 (Bankr. E.D. Pa. 2021)("Courts are divided on whether forbearance constitutes an extension of credit under 11 U.S.C. § 523(a)(2)(A)."). Bankruptcy courts in the Eleventh Circuit have held that forbearance agreements may constitute an extension or renewal of credit. *See In re Baxter*, 294 B.R. 800, 807 (Bankr. M.D. Ga. 2003); *In re Marx*, 138 B.R. 633, 636 (Bankr. M.D. Fla. 1992); *Matter of Smith*, 2021 WL 1234245, at *5 (Bankr. N.D. Ga. Mar. 31, 2021); *Theo Walter Co. Inc. v. Nathan (In re Nathan)*, 1993 WL 300054, at *4 (Bankr. S.D. Fla. June 23, 1993).

However, even if this Court were to determine that a forbearance agreement could be the basis of finding a debt non-dischargeable, the Plaintiffs' claims still fail. The Plaintiffs do not allege that they entered into a forbearance agreement or that they provided Mr. Halwani with a forbearance because of the statements made. The Plaintiffs merely allege that they voluntarily chose to forbear from enforcing their rights under the Agreements. However, where debtors merely engage in post debt-incurring misconduct to hinder creditor collection, a dischargeable debt does not become non-dischargable. *See In Re Gaddy*, 977 F.3d 1051, 1057 (11th Cir. 2020). The fact that the Plaintiffs here allege that they voluntary chose to forbear from enforcing their rights is not enough to except the debt itself from discharge.

### 3. The Plaintiffs failed to allege damages caused by forbearance.

Even if the Plaintiffs entered into a forbearance agreement with the Debtors, the Plaintiffs fail to allege that they were injured because of the forbearance.

Bankruptcy courts in Florida have required creditors who base their section 523(a)(2) non-dischargeability claims on forbearance agreements to prove: (1) that the creditor had valuable collection remedies at the time of the misrepresentation; (2) it did not exercise the remedies because of the misrepresentation; and (3) the remedies lost value during the extension period. *In*

*re Gilbert*, 631 B.R. 921, 928 (Bankr. N.D. Fla. 2021); *see also In re Dato*, 410 B.R. 106, 112 (Bankr. S.D. Fla. 2009). In *Dato*, the creditor alleged that as a result of the Debtor's fraud, the creditor forbeared from exercising its rights. *In re Dato*, 410 B.R. at 112. The creditor's complaint stated that as a result of the debtor's fraud, the creditor "was induced to forbear from pursuing its legal remedies [and if the Creditor] had not been induced to forbear, [it] would have vigorously pursued its legal remedies." *Id*. The court dismissed the Complaint stating that this was insufficient. *Id*. To show that a creditor suffered an injury as a result of a forbearance, the creditor must allege how they were injured by the forbearance.

Here, the Plaintiffs failed to specifically allege how they were harmed by any alleged forbearance. They do not allege that they would have had a better chance at recovery if they chose not to forbear; instead the Complaint insinuates that Plaintiffs would be in the same position as they allege that the Debtors were in debt, facing lawsuits, and not paying their debts as they came due.

### 4. A check is not a statement about the debtor's financial condition.

To prevail under section 523(a)(2)(B), the Plaintiffs must have relied on a written statement of the Debtors' financial condition. The last potential writing alleged to exist in the Complaint, which Plaintiffs allege warrant a finding in their favor under section (a)(2)(B), are eight false checks alleged to have been sent by Mr. Halwani. However, a check is not a statement of a debtor's financial condition. *In re Daprizio*, 365 B.R. at 282 ("The signing of checks or making draws on the line of credit, are not written financial statements of the [Debtor] as defined under Section 523(a)(2)(B) and does not qualify as a basis for relief under this count.").

### iii.    The Conspiracy to commit fraud claim[3]

Under Florida law, a civil conspiracy occurs where there is (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in furtherance of the conspiracy, and (d) damage to the plaintiff as a result of the acts performed pursuant to the conspiracy." *In re Harris*, 3 F.4th 1339, 1350–51 (11th Cir. 2021).

Civil conspiracy is not an independent cause of action. *Alhassid v. Bank of Am.*, N.A., 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014)(Florida does not "recognize[] an independent cause of action for civil conspiracy"). A Plaintiff must allege an underlying illegal act or tort on which the conspiracy is based. *Id.* ("the plaintiff must allege an underlying illegal act or tort on which conspiracy is based"); *Carlson v. Armstrong World Indus., Inc.*, 693 F. Supp. 1073, 1078 (S.D. Fla. 1987)("The basis of a civil conspiracy action is not the conspiracy itself but the civil wrong which is done through the conspiracy resulting in injury to the plaintiff.").

A finding that a debtor engaged in a conspiracy to defraud is insufficient to except from discharge debt under section 523(a)(2). *See In re Harris*, 3 F.4th at 1351 ("the traditional elements of nondischargeability under § 523(a)(2)(A) are not identical to the elements of a civil conspiracy to defraud.").

It is not entirely clear whether the Plaintiffs are seeking to use the conspiracy to commit fraud claim to except from discharge their claims under section 523(a)(2)(A). If the Plaintiffs are, a finding of conspiracy to defraud is insufficient to warrant a finding of non-dischargeability under section 523(a)(2)(A).

In their conspiracy to commit fraud claim, the Plaintiffs state that Mr. Halwani agreed and

---

[33] Plaintiffs' counsel, after this motion had been substantially drafted, has advised that it will seek to withdraw Count III in this case. This argument has been left in the motion in the off chance this count has not been withdrawn as of the time this motion is set for hearing.

conspired with Mrs. Halwani to commit the unlawful fraud. The allegations of the Complaint are conclusory statements and the Plaintiffs have failed to allege any ultimate facts to the effect that the Debtors agreed to commit fraud. The allegation that both of the Halwanis were involved in the alleged fraud is not sufficient, by itself, to warrant a court to find that they agreed to commit the fraud as a part of some "conspiracy". Parallel conduct is not enough to warrant a finding of conspiracy to commit fraud. *See Alhassid*, 60 F. Supp. 3d at 1319 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *see also Russo v. Fink*, 87 So. 3d 815, 819 (Fla. Dist. Ct. App. 2012).

As outlined *infra*, the Plaintiffs failed to sufficiently allege the underlying fraud which is the basis for the conspiracy to commit fraud claim. Because the Plaintiffs failed to allege facts sufficient to warrant a finding that the Debtors entered into an agreement to commit fraud or to support their underlying fraud claim, dismissing the conspiracy to commit fraud claim under 12(b)(6) is appropriate.

### c. Plaintiffs failed to allege facts sufficient to warrant a finding of non-dischargability against Mrs. Halwani.

Intent to defraud must be shown for each spouse. *Matter of Reed*, 700 F.2d 986, 993 (5th Cir. 1983)("The bankruptcy court correctly concluded that the Code does not allow attribution of intent from spouse to spouse."); *In re Savage*, 176 B.R. 614, 615 (Bankr. M.D. Fla. 1994)("The fraudulent intent of a husband is not necessarily imputed to his wife and the fact that the wife derived a benefit from her husband's conduct, even if the wife had no idea of this misconduct[.]"); *In re Mart*, 75 B.R. 808, 810 (Bankr. S.D. Fla. 1987)(same); *see also In re Miller*, 39 F.3d 301, 306 (11th Cir. 1994)(not finding a wife's fraudulent intent based on the husband misconduct where

the wife's "participation in the [Couple's] financial matters was extremely minimal."); *In re Wiles*, 166 B.R. 975, 980 (Bankr. M.D. Fla. 1994)("Wiles signed the note because her husband asked her to do so. This is insufficient to establish any of the elements req establish any of the elements required under § 523(a)(2)(A)."); *In re Shane*, 80 B.R. 240, 243 (Bankr. S.D. Fla. 1987)("The Court adopts the reasoning and holdings of the various courts that have refused to impute fraud between spouses[.]").

Here, the Plaintiffs failed to allege that Mrs. Halwani had her own independent intent to deceive the Plaintiffs under section 523(a)(2). The Plaintiffs allege that when Mr. Halwani made some of representations to Gautier, Mrs. Hawlani either "was present and acquiesced to everything that Isaac said[,]" or the statements were made "with Giselle's approval[.]" [Complaint ¶s 16, 25]. Even if Mrs. Halwani acquiesced to the statements and commitments, the Plaintiffs failed to allege that she acquiesced to the statements with the intent to not preform or that she lacked the ability to perform. Intent to deceive is a subjective measure. *See In re Carter*, 593 B.R. 354, 364 (Bankr. M.D. Fla. 2018); *In re Taylor*, 211 B.R. 1006, 1013 (Bankr. M.D. Fla. 1997)("the court must determine the debtor's subjective intent to repay."); *see also In re Copeland*, 291 B.R. 740, 765 (Bankr. E.D. Tenn. 2003)("A subjective measure is used to determine a debtor's intent to deceive[.]"). The limited allegations against Mrs. Hawlani are insufficient to meet the heightened pleading standard of Rule 9(b) to show she had any intent, let along sufficient intent as required.

Because the Plaintiffs failed to allege sufficient facts to warrant a finding of liability against Mrs. Halwani under section 523(a)(2)(A) or (B), the dismissal of the claims against Mrs. Halwani under Rule 12(b)(6) is appropriate.

### IV.    Conclusion

Because the Plaintiffs failed to sufficiently allege their 11 U.S.C. §523(a)(2)(A) and (B)

Case No. 22-14959-LMI
Adv. Proc. No. 22-01345-LMI

claims and their conspiracy to commit fraud claim, a dismissal of the Complaint under Rule 12(b)(6) is appropriate. Gautier lacks standing to assert the claims in the Complaint because he assigned all rights under the Agreements to Phirik. The Plaintiffs also failed to allege sufficient facts to warrant a finding of non-dischargability against Mrs. Halwani; thus, dismissal of the claims against Mrs. Halwani is appropriate.

**WHEREFORE**, Isaac Halwani and Giselle Halwani respectfully request that this Court enter an Order granting the Motion to Dismiss and dismissing the Plaintiffs claim against them.

Dated: December 15, 2022.

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Attorneys for Isaac and Giselle Halwani*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300

By: /s/ *Eric D. Jacobs*
Glenn D. Moses, Esq.
Florida Bar No. 174556
gmoses@gjb-law.com
Eric D. Jacobs, Esq.
Florida Bar No. 85992
ejacobs@gjb-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been furnished via CM/ECF notification to all parties entitled to receive notice via CM/ECF on this 15th day of December, 2022.

/s/ *Eric D. Jacobs*
Eric D. Jacobs, Esq.